IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-1760-RBJ

NAOMI MYERS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Naomi Myers' application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II and Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on February 2, 2011. The Court apologizes to the parties for the delay in resolving the case.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th

Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it is "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Facts**

Plaintiff Naomi Myers was born on December 8, 1960. She was 45 years old at the time of her June 29, 2006 application for benefits. Ms. Myers has limited education and is able to communicate in English. She has a relevant history of light to medium work as a machine operator, housekeeper and assembler. R. at 17.

The administrative record documents Ms. Myers' medical and mental health treatment through 2008. In relevant part, the record indicates that plaintiff received:

- Some treatment and diagnostic testing for various complaints at Memorial Hospital in 1992 and in 2006 to 2007. R. at 201-02, 249-50, 277-83. Blood work from September 2007 demonstrated potential pre-diabetic tendencies. R. at 277.

- Treatment at Penrose-St. Francis Health Services between September 2005 and February 2008 for a variety of ailments. R. at 165-200. In September 2005 the hospital ran blood tests on a complaint of chronic fatigue. R. at 197-200.

- Treatment for post-traumatic stress disorder ("PTSD") at Switzer Community Counseling Center between June 2005 and July 2007. R. at 203-07, 251-54. Ms. Myers' GAF scores were 60 and 55 in 2005 and 50 in a July 2007 Mental Ability Assessment for Work-Related Activities supervised by L. Rutleck, M.D., and prepared by Ellie Scarborough. R. at 204, 207, 251.[1] Ms. Scarborough observed that chronic fatigue affected adversely Ms. Myers' memory, concentration and task comprehension. R. at 251-53.

---

[1] The parties refer to Dr. Rutluck as Dr. Tillula in the briefs but the record indicates that the opinion was supervised by L. Rutluck, M.D.; the record name is used in this decision.

- Completion of two MED-9 forms for the Colorado Department of Human Services by Janak Joshi, M.D., in September 2006 and October 2007. R. at 208-09, 274-76. Dr. Joshi opined that Ms. Myers was unable to work due to hypersomnia, chronic fatigue, depression, anxiety (2006) and later Graves Disease and PTSD (2007). *Id*.
- A consultative examination for the Social Security Administration by David Gibbons, D.O., on November 21, 2006. R. at 238-40. Dr. Gibbons reviewed some records that are not included in the administrative record including progress notes from Dr. Jamieson Kennedy, M.D., and a counseling letter from LASMA dated August 2006. R. at 238. He also examined some of Ms. Myers' diagnostic tests from Memorial Hospital. Dr. Gibbons diagnosed Ms. Myers with fatigue of unclear etiology, Grave's disease with episodes of palpitations, unknown liver problems, hyperlipidemia and sleep disturbance. R. at 240. He found her physical examination to be normal and elicited no objective findings "that would substantially corroborate or refute the client's complaints of functional limitation due to fatigue and/or pain." *Id*.
- Treatment at Mission Medical Center between September 2005 and April 2008 for fatigue, palpitations, PTSD, periodic limb movement disorder/restless leg syndrome, insomnia, hypersomnolence treated with anti-depressants, anxiety, depression and hyperthyroidism. R. at 255-73, 290-309.
- Completion of a "CFS RFC Questionnaire" by Jamieson D. Kennedy, M.D., on January 9, 2006. R. at 159-64. Dr. Kennedy diagnosed Ms. Myers with Chronic Fatigue Syndrome ("CFS") and hypersomnolence. R. at 159. He determined that her fatigue interferes with her attention and concentration and that her limitations in this regard had applied since 1991. R. at 161. He opined that she needs to be able to shift at will

3

between sitting, standing or walking in the workplace and that she would need up to three non-scheduled breaks during an eight-hour workday. R. at 162. She would likely be absent from work twice a month because of her diagnosis. R. at 163.

- A Consultative Examination for the Social Security Administration by Brad A. Marten, Psy.D, on October 24, 2006. R. at 210-17. Dr. Marten apparently reviewed medical records that are not part of the administrative record. *See* R. at 212 (noting a statement by Dr. Kennedy in unidentified reviewed records that: "There has never been any medical verification or any definitive diagnosis. She is a very functional lady who has what I would call chronic fatigue syndrome."). Dr. Marten diagnosed Ms. Myers with Dysthymic Disorder, an unspecified Anxiety Disorder, PTSD Provisional, Obsessive-Compulsive Disorder ("OCD") Provisional, Mathematics Disorder and Somatization Disorder.[2] R. at 215. Ms. Myers was also reported to have Borderline Intellectual Functioning, CFS based on Physician's Assessment and a GAF of 51. R. at 216.

- A medical examination, Psychiatric Review Technique and Mental RFC Assessment by James Wanstrath, Ph.D., on November 14, 2006. R. at 219-237. Dr. Wanstrath diagnosed Ms. Myers with borderline intellectual functioning, an affective disorder and an anxiety-related disorder, and suggested ruling out PTSD and OCD. R. at 221, 223, 225. Her GAF was 51. R. at 221. Dr. Wanstrath found that she had moderate restrictions on her daily activity, her ability to maintain concentration, persistence and pace and her ability to understand and remember detailed instructions. R. at 230, 234.

---

[2] Clinicians use the specifier "provisional" "when there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 4 (4th ed., text revision 2000).

4

Plaintiff first applied for SSI and DIB alleging a disability onset date of September 8, 2004. R. at 100. An ALJ denied her claims on June 1, 2006. R. at 9. No appeal was taken. R. at 23. Ms. Myers subsequently refiled applications for SSI and DIB on June 20, 2006 due to Graves disease, manic depression, low blood sugar, heart palpitations and liver problems. R. at 89-99. Plaintiff's SSI application alleged disability beginning on September 8, 2004. R. at 94. Her DIB application alleged a disability onset date of June 7, 2006. R. at 89. Her current claims were denied administratively and she filed a timely written request for a hearing. R. at 89, 19. Her case was heard before ALJ William J. Musseman, who issued an unfavorable ruling on August 1, 2008. R. at 19. Ms. Myers timely appealed to the Appeals Council, which denied her request for review on May 28, 2010. R. at 1. The instant appeal followed.

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine if Ms. Myers was disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step one he found that the claimant had not engaged in substantial gainful activity since June 2, 2006, the day after her last applications for disability were denied. R. at 11. At step two he determined that "[t]he claimant has the following severe impairments: Grave's disease, an affective disorder, borderline intellectual functioning, and anxiety…" *Id*. At step three he found these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 11-12.

Step four requires an ALJ to assess a claimant's residual functional capacity ("RFC") in light of medical impairments and determine if the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ made the following RFC assessment:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b). From a physical standpoint, the claimant can perform the full range of work, *e.g.*, sitting or standing/walking for

at least 6 hours during an 8-hour workday; lifting and carrying 10 pounds frequently and 20 pounds occasionally; with no relevant manipulative, postural, communicative, or environmental restrictions. She is limited, however, to simple unskilled work with GED levels of no more than 1 or 2, and SVP levels of 2 or less. She should also not have to deal with the general public.

R. at 12. He also determined that claimant was unable to perform past relevant work. R. at 17.

In step five the ALJ considers the claimant's age, education, work experience and RFC to determine if she is able to adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). If not, then she is disabled with the meaning of the Act. *Id*. The ALJ found that Ms. Myers is capable of making a successful adjustment to work that exists in significant numbers in the national economy and denied her claim for benefits. R. at 17-18. This determination relied heavily on testimony given by a Vocational Examiner ("VE"), Margot Burns, at the hearing. *Id*.

The VE testified that a hypothetical individual of plaintiff's age, education and vocational history that shared her RFC and with a non-exertional limitation of no complex tasks could perform a number of unskilled, light and sedentary positions in the workforce. R. at 42-43. The VE also opined that, for an individual with the same profile, a non-exertional limitation of an unpredictable basis that required the need to lay down for an undetermined amount of time up to three times a week would not be acceptable in the competitive job market. R. at 43.

**Conclusions**

Plaintiff's claims span three subjects: construction of the applications as an appeal of the earlier decision, weighting of medical opinions, and assessment of the RFC and whether claimant is able to perform other work. The first claim is a procedural matter that raises issues of fairness, and the rest primarily concern the ALJ's analysis at steps two, four and five of the five-step evaluation process. 20 C.F.R. §404.1520(a)(4)(ii),(iv)-(v).

I.      **<u>Whether the June 2006 applications appeal the June 1, 2006 decision</u>**

Ms. Myers requests that her June 2006 SSI application be construed as an appeal of the June 1, 2006 denials of her prior applications and requests the Court to consider remanding the case to supplement the record in her current applications for benefits with the record of the prior case. She argues that the Commissioner has a policy of forgiving late filings where the claimant lacks mental capacities. *See* SSR 91-5p, 1991 WL 208067 (July 1, 1991). She urges the Court to apply the same forgiveness here, alleging lack of capacity to understand the appropriate appeal form and because she filed her second applications immediately after the denial.

Leaving aside the question of Ms. Myers' mental impairments, the record contains no indication that claimant or her attorney has ever asked the Commissioner to reopen her earlier applications on these grounds. To allow plaintiff to raise these issues for the first time on appeal to this Court would short circuit the administrative process and deprive the agency of the opportunity to apply its own appeals policies. This Court has limited jurisdiction and is authorized by Congress only to hear "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g). Under this statutory review scheme the Commissioner is charged with "specify[ing] such requirements for exhaustion as he deems serve his own interests in effective and efficient administration." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). The Commissioner requires, in the same policy claimant cites in her request for leniency, that requests for review made after the 60-day time period set forth in 20 C.F.R. § 404.909(a)(1) be in writing and document the reasons why the request was untimely. SSR 91-5p, 1991 WL 208067, *1 (July 1, 1991). These requirements have not been met, and the Court declines to decide whether review of plaintiff's earlier claims is appropriate where she is represented by counsel and has not pursued the appropriate administrative remedies.

Claimant next argues that her due process rights were violated by the ALJ's decision to restrict her testimony to the period of the current applications while relying himself on evidence from the earlier application period. *See* R. at 20-44. Additional due process violations are alleged because the ALJ relied on an unidentified report by Dr. Kennedy that does not appear in the record. R. at 15 (referencing statements by Dr. Kennedy); *see* R. at 212 (report of Consultative Examiner Dr. Marten identifying statement made by Dr. Kennedy in undisclosed reviewed records). Claimant asserts that reliance on Dr. Kennedy's report is a constructive reopening of the prior decision because she presumes that the non-record report by Dr. Kennedy originated from the first proceeding.

Claimant's general references to her due process rights lack a meaningful attempt to document the type of "colorable constitutional claim" required for a federal court to exert jurisdiction over a determination by the Commissioner that a claim for benefits is barred by the administrative doctrine of *res judicata*. *See Ingmire v. Astrue*, 359 F. App'x 38 (10th Cir. 2009) (unpublished); *Blair v. Apfel*, 229 F.3d 1294, 1295 (10th Cir. 1990). Nonetheless, it is clear the ALJ improperly relied on a statement made by Dr. Kennedy outside of the record in finding that claimant lacked credibility. R. at 15. This reliance is particularly concerning if Dr. Kennedy's statement originated in the earlier record. The ALJ also relied on treatment notes from the first application period (2005) in assessing claimant's overall level of functioning or GAF. *Id*. If defendant believes that the 2005 treatment notes must necessarily be considered, as argued in the Response Brief, then principles of fundamental fairness dictate that the Commissioner cannot reasonably exclude Ms. Myers' support for her claims from this same period. *Noller v. Astrue*, No. 07-cv-01796, 2008 WL 4452135, at *8 (D. Colo. 2008).

Taken together, these procedural disparities were not clearly harmless. The ALJ's reliance on non-record evidence and pre-application time period evidence at the very least

influenced his final determination in Ms. Myers' case. R. at 15. It may well have been dispositive. Even if it were not, it may be that evidence Ms. Myers would have introduced from her first application period would have persuaded the ALJ of her disability. Such determinations are the province of the ALJ, to be made on the record after review of the evidence therein, and the Court remands this decision with direction to the Commissioner to reopen the record to include all evidence relied upon by the ALJ in his determination of Ms. Myers' claims. The Commissioner is also directed to allow Ms. Myers to introduce evidence from the earlier application period for the limited purpose of making a determination on her instant applications. The Court declines to exert jurisdiction over the earlier proceedings or to find that the ALJ constructively reopened those proceedings through his examination of some medical evidence from that period. *Carson v. Barnhart*, 140 F. App'x. 29, 40 (10th Cir. 2005) (unpublished); *Hamlin v. Barnhart*, 365 F.3d 1208, 1216 n. 8 (10th Cir. 2004).

## II.     Whether the ALJ Properly Weighted the Medical Opinions

Claimant makes a number of challenges to the ALJ's weighting of the medical opinions, and especially the ALJ's determination of the weight given to varying assessments of Ms. Myers' GAF. Specifically, claimant challenges the ALJ's decision to rely on GAF scores from the pre-application time as unfair selective application of evidence. The Court agrees. The ALJ's decision to find credible two higher GAF scores (55 and 60 in 2005) from a time period before the date of alleged disability onset, and from which Ms. Myers was not allowed to introduce evidence, rather than the three more recent and consistently lower GAF scores (51 in Oct. 2006, 51 in Nov. 2006, and 50 in July 2007) was procedurally unfair. R. at 15, 17, 207, 204, 216, 221, 251. Moreover, it fails to consider that claimant's GAF may have changed over time. In several instances, the ALJ relies on Ms. Myers' 55 and 60 GAF scores as support for his unfavorable ruling. R. at 14, 15, 17. This reliance warrants reconsideration on remand.

Ms. Myers also alleges that the ALJ erred in discrediting the July 2007 mental health opinion of Ms. Scarborough.[3] The ALJ rejected these opinions because he found them to be internally inconsistent and contrary to earlier treatment notes, including the GAF score of 60 from the pre-application period. R. at 17. At that time, however, claimant's GAF was reported at 50. R. at 251. The Court is not convinced that claimant's 2005 GAF score necessarily implicates her level of functioning in July 2007 and orders the Commissioner to reconsider this issue when he reexamines his reliance on the various GAF scores on remand.

Next claimant argues that it was error to not explicitly discuss whether Dr. Kennedy's opinion was given controlling weight under 20 C.F.R. § 416.927(d)(2). However, it is well established that the ALJ need not address each factor under 20 C.F.R. § 416.927(d), expressly or at length, so long as "good reasons" are given in a decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination."). The reasons articulated by the ALJ in his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). Here, the ALJ gave Dr. Kennedy's opinion controlling weight by agreeing, overall, with his findings. R. at 16. In a notable exception, the ALJ discounted Dr. Kennedy's opinion that claimant's fatigue constantly interferes with her concentration. *Id*. He offered sufficient support for this decision, having already raised concerns with Ms. Myers' credibility

---

[3] Defendant, in the Response Brief, argues that Ms. Scarborough's opinions are entitled to no weight because she is not a medical doctor. However, Dr. Rutluck supervised her July 2007 opinion and the ALJ appears to have accepted the assessment as a medical source opinion. Given this acceptance, the Court finds that Dr. Rutluck's supervision is sufficient under 20 C.F.R. § 404.1503(a)(2).

and in explicitly making some accommodations for limits on her concentration by finding that she can do only unskilled work. R. at 15-16. However, the Commissioner is encouraged to reexamine his finding that Ms. Myers' fatigue does not constantly interfere with her concentration to the extent, if any, that he reconsiders his opinion of her credibility on remand.

Claimant also argues that it was error for the ALJ to find Ms. Myers capable of unskilled labor when Dr. Kennedy opined that she would need to be absent from work twice per month. Here, the defense presents credible evidence that unskilled employment accommodates this limitation. *See Kirby v. Astrue*, 568 F. Supp. 2d 1225, 1229 (D. Colo. 2008). The ALJ's failure to discuss this restriction was harmless. Finally, claimant asserts that it was error for the ALJ to consider only Ms. Myers' CFS impairments and alleges that he did not consider impairments arising from her sleep disorder and hypersomnolence. The Court finds that that Dr. Kennedy's opinion, which the ALJ largely accepted, was based on plaintiff's "impairments" including her sleep disorder and hypersomnolence and the ALJ did not err in this regard. R. at 162.

### III.    Whether Claimant's RFC and Ability to Adjust to Work were Properly Assessed

Ms. Myers mounts a variety of attacks on the ALJ's determination of her RFC at step four. A number of these claims relate to the ALJ's alleged failure to consider her PTSD and depression-caused hypersomnolence or CFS, the cumulative impacts of her impairments, her moderate psychological limitations, the testimony of Fred Johnson and her inability to keep her last job. However, the record indicates that the ALJ did explicitly consider each of these factors in his discussion of claimant's RFC. R. at 13-16. Claimant's assertions to the contrary are unfounded and ill supported. Claimant's argument that the ALJ should have considered that the Colorado Department of Vocational Rehabilitation was unable to find her work is also rejected, as she introduced no record support for this claim.

Ms. Myers also alleges several procedural or legal errors in the ALJ's consideration of evidence relating to her RFC. First, she argues that the ALJ predetermined her credibility based on the denial of her earlier applications. While the ALJ at the hearing did comment that he was skeptical that her disability onset the day after her earlier application for benefits was denied, his written decision does not rely on this determination but rather considered and discussed the record evidence and how it affected his view of Ms. Myers' credibility. Plaintiff also claims that the ALJ set the bar of proof for claimant too high and argues that objective medical evidence is not needed to demonstrate claimant's CFS under *Sisco v. Sec'y of Health & Human Serv's*, 10 F.3d 739 (l0th Cir. 1993). *Sisco* involved a judicial determination that a claimant suffered from CFS based on an extensive treatment record and diagnoses of her condition using formal diagnostic criteria. *Id*. The Court cannot determine whether these cases are analogous given the record problems in this case but presumes that record supplementation on remand will provide the ALJ with additional medical evidence that could affect his determination of Ms. Myers' credibility, impairments at step two (including if her CFS is a severe impairment) and RFC.

Next, Ms. Myers' challenges the ALJ's failure to include Dr. Kennedy's limitation accounting for her need to take regular unscheduled breaks. R. at 162. The ALJ selectively discounted Dr. Kennedy's recommended restrictions on Ms. Myers' activity by not including this limitation. Claimant correctly points out that the ALJ fails to justify his exclusion of these restrictions in his written decision. The ALJ appears to have at least considered Ms. Myers' reported need to rest during the workday in her administrative hearing, when he asked the VE whether a non-exertional limitation requiring an individual to three unscheduled breaks per week for an indeterminate amount of time to lie down would be acceptable in the competitive job market. R. at 43-44. However, his decision did not discuss the VE's testimony that it would not be acceptable. R. at 6-19. This was clear error and unsupported by substantial evidence. On

remand the Commissioner must consider the impact of this restriction on Ms. Myers' RFC at step four and on her ability to adjust to other work at step five.

Claimant also argues that the ALJ was obligated to contact Dr. Kennedy to clarify the ambiguity between his off record statements and his CFS RFC. The Court declines to reach this argument as it expects the Commissioner to resolve the off record evidence improprieties on remand. In doing so, the Commissioner must meet the Social Security Administration's burden of making "every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *See Fleetwood v. Barnhart*, 211 F. App'x 736, 740-41 (10th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).

**Order**

The decision of the ALJ is reversed. The case is remanded to the Commissioner for proceedings consistent with this order, namely that he develop a sufficient record on which to assess Ms. Myers' impairments at step two, base his physical RFC at step four and determine the claimant's ability to perform other work at step five.

DATED this 24th day of January, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge